UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIDENT FASTENERS, INC.,

    Plaintiff,

v.

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA,

    Defendant.
_____/

Case No. 1:19-cv-983

Hon. Hala Y. Jarbou

**OPINION**

Plaintiff Trident Fasteners, Inc. is suing its insurer, Selective Insurance Company of South Carolina.  In Count I of the complaint, Trident alleges that Selective breached their insurance contract by refusing to pay for a settlement entered between Trident and a third party.  (Corrected Compl., ECF No. 5, PageID.17-18.)  In Count II, Trident seeks a declaration that the contract requires Selective to pay for that settlement.  (*Id.*, PageID.18-19.)  Selective filed an answer and counterclaimed that it is not required to pay for the settlement in question because Trident entered the settlement without Selective's approval.  (Answer, ECF No. 10.)  After answering, Selective moved for judgment on the pleadings.  (ECF No. 44.)  That motion will be granted.

**I. Jurisdiction**

Trident's breach of contract claim is rooted in state law.  Federal courts may exercise jurisdiction over state law claims if the amount in controversy exceeds $75,000 and no plaintiff is a citizen of the same state as any defendant.  28 U.S.C. § 1332.  Trident is incorporated and has its principal place of business in Michigan.  (Correct Compl., PageID.12.)  Selective is incorporated in Indiana and has its principal place of business in New Jersey.  (Answer, PageID.48.)  The amount in controversy is $1.3 million.  (Corrected Compl., PageID.18.)  The Court has jurisdiction

over the breach of contract claim because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

Courts may declare the rights and legal relations of parties seeking such a declaration in a case of actual controversy within its jurisdiction. 28 U.S.C. § 2201. The Court may therefore exercise jurisdiction over the claims for declaratory relief.

## II. Background

The following facts are set forth in Trident's complaint. They are assumed to be true for the purposes of Selective's motion.

Trident supplies customized screws and bolts for use by original equipment manufacturers in the automotive industry. (Corrected Compl., PageID.13.) Tenneco, Inc. is Trident's biggest customer. (*Id.*, PageID.14.) The actual supply chain is more complex, but the gist is this: a company performs heat treatments on Trident's fasteners, which are sold to Tenneco who, after doing its own work, sells component parts containing the fasteners to General Motors Corporation. (*Id.*) The heat-treating company did a bad job on several batches, which resulted in defective fasteners. (*Id.*) The chain of chargebacks moves in the opposite direction: GM was forced to conduct recalls in June and August 2018, and initiated chargebacks against Tenneco, who demanded payment from Trident. (*Id.*, PageID.14-15.)

Trident has an insurance policy with Selective to deal with such unfortunate situations. Around October 31, 2018, Trident submitted a claim to Selective to cover the costs of the chargebacks. (*Id.*, PageID.15.) Selective acknowledged receipt of the claim but then went silent. (*Id.*) Having heard nothing, Trident contacted Selective in February 2019. (*Id.*) Selective assigned a new adjuster to handle the claim around the end of February. (*Id.*, PageID.16.) More silence.

Trident contacted Selective again in April 2019 to inform the insurer that Tenneco had made a settlement offer and to request a coverage position. (*Id.*) Selective requested more

information from Trident first, which it provided at the end of April. (*Id.*) On May 10, Selective "denied consent to send any settlement letter." (*Id.*) Then, on June 28, Selective issued a reservation of rights letter which listed possible grounds for excluding coverage and offered to defend Trident against Tenneco's claims.[1] (*Id.*)

Concerned about the delays and keeping a good relationship with Tenneco, Trident ignored Selective's admonitions and executed a settlement agreement with Tenneco before any lawsuit had been filed. (*Id.*, PageID.17.) Trident then requested payment from Selective, which the insurer refused. This lawsuit ensued.

### III. Standards

**A. Judgment on the Pleadings**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts apply the same standard of review when analyzing a motion for judgment on the pleadings as they do when deciding a motion to dismiss for failure to state a claim. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 295-96 (6th Cir. 2008). When deciding a Rule 12(c) motion brought by the defendant, a court must accept all the complaint's well-pleaded factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and view the complaint in the light most favorable to the plaintiff. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The motion may be granted only if the defendant is nevertheless entitled to judgment. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A Rule 12(c) motion may be brought to challenge the legal sufficiency of the complaint, as well as to raise an affirmative defense. *Hindel v. Husted*, 875 F.3d 344, 346-47 (6th Cir. 2017).

---

[1] The complaint gives the date of the letter as June 25, 2019, but Trident later indicated that the correct date is June 28. (Pl.'s Resp., ECF No. 49, PageID.668 n.1.)

3

**B. Insurance Contracts**

The parties agree that Michigan law controls the insurance contract at issue. Insurance policies must be construed "in the same manner as any other species of contract, giving its terms their 'ordinary and plain meaning if such would be apparent to a reader of the instrument.'" *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012) (quoting *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003)). Where the meaning of a provision is unambiguous, courts must enforce the contract as written without consideration of extrinsic evidence. *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 398 n.6 (Mich. 1991).

Provisions in insurance contracts limiting the scope of coverage are valid "as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Trierweiler v. Frankenmuth Mut. Ins. Co.*, 550 N.W.2d 577, 579 (Mich. Ct. App. 1996) (citing *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502 (Mich. 1995)). "An insurance company should not be held liable for a risk it did not assume." *Id.* (citing *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431 (Mich. 1992)). Exclusionary clauses are "strictly construed in favor of the insured," but "coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claim." *Id.*

The insured bears the burden of proving that the policy covers the claimed losses. *Williams v. Detroit Fire & Marine Ins. Co.*, 27 N.W. 452, 453 (Mich. 1937). The insurer, on the other hand, carries the burden of proving that a policy exclusion precludes coverage of an otherwise covered loss. *Heniser*, 534 N.W.2d at 505 n.6.

**IV. Analysis**

In the insurance agreement, Selective promises to pay claims against Trident that are covered by the policy. (Policy, ECF No. 10-1, PageID.276.) The contract also gives Selective "the right and duty to defend [Trident] against any 'suit'" relating to a covered claim. (*Id.*) Two

4

provisions are at issue here.  One states that Trident will not be covered for voluntary payments made without Selective's permission: Trident "will [not], except at [Trident's] own cost, voluntarily make a payment, assume any obligation, or incur any expense . . . without [Selective's] consent." (*Id.*, PageID.286.)  The other precludes legal action against Selective with respect to a claimed payment unless the action is brought "to recover on an agreed settlement or on a final judgment against [Trident]."  (*Id.*)

Selective argues that it cannot be liable for Trident's settlement payment to Tenneco because it did not consent to that settlement, which also means that it cannot be subject to suit here. Similar "voluntary payment" and "no action" clauses have been upheld as valid and precluded liability against insurers.  *See Coil Anodizers, Inc. v. Wolverine Ins. Co.*, 327 N.W.2d 416, 417-18 (Mich. Ct. App. 1982).  These provisions are deemed waived only when the insurer "both denie[s] liability *and* refuse[s] to defend an *action* against the insured."  *Id.* at 419 (citing *Stephens v. Penn. Cas. Co.*, 97 N.W. 686 (Mich. 1903)) (emphasis in original).  The "action" requirement means that the insured has to have been sued before the insurer's conduct can amount to a waiver of the voluntary payment and no-action provisions.  *Id.*  Since Tenneco never filed suit against Trident, it would seem that Selective cannot be held liable for Trident's settlement payment.

Trident proposes a workaround.  It argues that it was not bound by the voluntary payment and no-action provisions when it settled with Tenneco because Selective itself had materially breached the contract first.  Selective cannot ask to be saved by the very contract it ripped up.  How did Selective breach?  Bad faith.  According to Trident, Selective unreasonably delayed its investigation and communications with Trident, refused to investigate Trident's claim, unreasonably refused to participate in settlement negotiations and withheld consent to the settlement proposal, unreasonably delayed in issuing a reservation of rights letter and offering to

5

defend Trident, and, finally, refused to pay Trident's insurance claim. (Corrected Compl., PageID.18.)

In limited circumstances, case law has imposed on insurers "the duty to act in good faith in negotiating a settlement within the policy limits, and the duty to act in good faith in investigating and paying claims." *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 883 F. Supp. 1101, 1111 (E.D. Mich. 1995) (collecting cases). Citing an unpublished case, Trident implies that an insurer must also exercise good faith in defending a "dispute." (Pl.'s Resp., PageID.672 (citing *Gen. Cas. of Wis. v. Secura Ins.*, No. 270457, 2006 WL 3019439, at *1 (Mich. Ct. App. Oct. 24, 2006)).) In the abstract, then, Trident can sue its insurer for bad faith.

But the question is *when* the duty of good faith is triggered. The duty to defend an insured does not arise until a lawsuit is actually filed. *Durakon Indus. v. Columbia Cas. Co.*, No. 268612, 2006 WL 2061498, at *4 (Mich. Ct. App. July 25, 2006) ("[N]o suit was instituted which defendants could refuse to defend."); *see also Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 871 (Mich. Ct. App. 2008) (duty to defend not triggered until lawsuit is filed against insured) (citing *Coil Anodizers*, 327 N.W.2d at 416).

The duty to investigate is simply a subset of the duty to defend. *Koski v. Allstate Ins. Co*, 572 N.W.2d 636, 639 n.5 (Mich. 1998) ("An insure[r's] duty to defend . . . includes the duty to investigate."). Trident cites *Higgins Industries, Inc. v. Fireman's Fund Insurance Company*, 730 F. Supp. 774 (E.D. Mich. 1989) for the proposition that the duty to investigate in good faith precedes the filing of a lawsuit. The *Higgins* court noted insurers' "duty to investigate the facts of a situation in which liability *might result* is inherent in an insurance company's contractually conferred power to decide how to handle the claim *before a suit is filed*." *Id.* at 777 (emphasis added). But, as Selective points out, *Higgins* dealt with an insured who received a demand letter

6

from the Michigan Department of Natural Resources. *Id.* at 776. Under Michigan law, such demand letters from regulators are considered "the functional equivalent of a suit brought in a court of law." *Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.*, 519 N.W.2d 864, 870 (Mich. 1994) *overruled on other grounds by Wilkie*, 664 N.W.2d at 778. Thus, the statement of law from *Higgins* is context-specific and cannot be generalized to the degree suggested by Trident. *Higgins* holds that the duty to investigate is triggered when a lawsuit, or its functional equivalent, is brought against the insured.

The duty of an insurer to participate in settlement negotiations in good faith arises with the filing of a complaint. With respect to settlement negotiations, the Michigan Supreme Court has stated that:

> The rule subjecting an insurer to liability to its insured . . . for failure to act in good faith in settlement negotiations recognizes that *where the insurer defends the action* it has a substantial control *in the conduct of the lawsuit* and is in a position to disregard the interests of the insured and expose him to the risk of [an excessive judgment].

*Stockdale v. Jamison*, 330 N.W.2d 389, 392 (Mich. 1982) (emphasis added). The emphasized language suggests that the duty to negotiate a settlement in good faith is not implicated until the insured has been sued. The court in *Durakon* rejected a pre-suit bad faith argument, holding that the plaintiff could not "prevail on such a theory based on a supposed refusal to settle litigation that had yet to arise." *Durakon*, 2016 WL 2061498, at *4 (citing *Frankenmuth Mut. Ins. Co. v. Keeley*, 461 N.W.2d 666, 667 (Mich. 1990)).

In short, Trident cannot argue breach of contract through bad faith because the duties of good faith at issue only come into play after a lawsuit is filed against the insured.[2] Trident was

---

[2] In its opposition brief, Trident seems to argue that Selective's alleged unreasonable delay in investigating/processing the claim constitutes independent grounds for a breach of contract claim. (*See* Pl.'s Resp., PageID.676.) However,

never sued.  Without a prior material breach by Selective, the insurance contract still controlled. Selective was therefore acting within its rights when it refused to consent to Tenneco's settlement offer and instead promised to defend Trident.  Trident took Tenneco's offer nonetheless; the voluntary payment and no-action provisions of the insurance contract absolve Selective of any obligation to reimburse.

A final issue is whether Trident's complaint should be dismissed with or without prejudice. The Court does not see how any amended allegations could cure the problems identified in this Opinion.  This is not dismissal for inartful pleadings; the basis of Trident's claims are foreclosed because, even accepting the allegations as true and drawing all inferences in Trident's favor, Selective did not breach the insurance contract.  Therefore, the complaint should be dismissed with prejudice.

## V. Conclusion

For the reasons above, the Court will grant Selective's motion for judgment on the pleadings.  The complaint will be dismissed with prejudice.  An order and judgment will enter consistent with this Opinion.

Dated:   April 8, 2021                            /s/ Hala Y. Jarbou
                                                                                 HALA Y. JARBOU
                                                                                 UNITED STATES DISTRICT JUDGE

---

the complaint lists "unreasonable delay" as another way Selective acted in bad faith.  (Corrected Compl., PageID.18.) In any event, the case Trident cites in support of this argument, *Alyas v. Gillard*, 446 N.W.2d 610 (Mich. Ct. App. 1989), is of no help.  *Alyas* discussed unreasonable delay that occurred after a lawsuit had been filed.  *Id.* at 160-61. As with bad faith, the filing of a lawsuit is a threshold question.  No lawsuit was filed in this case, so any independent unreasonable delay argument fails.